IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TOCCI BUILDING CORPORATION,

                 Plaintiff,

v.

TRANE U.S. INC. a/k/a TRANE COMPANY,

                 Defendant.

OPINION and ORDER

23-cv-110-jdp

---

      Plaintiff Tocci Building Corporation and defendant Trane U.S. Inc. were both involved in the construction of a new hotel owned by Connell Hospitality LLC. Tocci was the general contractor; Trane was a subcontractor that was hired to design and manufacture the hotel's HVAC system. Tocci and Trane did not deal with each other directly. Rather, Tocci paid another subcontractor, Quality Construction Heating and Air, Inc., which was supposed to pay Trane. But Quality Construction did not pay Trane, leading Trane to file a lien against the construction project. That led to trouble for Tocci.

      Tocci says that Trane harmed Tocci in two main ways. First, Tocci says that it only continued to pay Quality Construction because Trane represented that it was receiving payments and waived its lien rights. Second, Tocci says that Trane agreed to allow Tocci to purchase the HVAC equipment directly from Trane after Tocci learned that Quality Construction was not making payments, but Trane then reneged on that agreement by negotiating directly with Connell while also making misrepresentations to Connell about Tocci. This, Tocci says, led to Connell terminating its contract with Tocci. Tocci asserts claims against Trane for tortious interference with a contract, breach of implied contract, promissory estoppel, and indemnity.

Trane moves to dismiss each of Tocci's claims for multiple reasons, including that they are untimely, fail to state a claim, and are barred by an arbitration proceeding between Tocci and Connell. The court agrees with Trane that the tortious interference and implied contract claims are untimely and that Tocci has not stated a claim for indemnity. The case will proceed on the promissory estoppel claim.

ALLEGATIONS OF FACT

The following allegations are taken from the complaint, attached documents, and supplemental allegations in Tocci's brief. The court accepts the allegations as true for the purpose of Trane's motion to dismiss.

In 2015, Connell Hospitality LLC hired Tocci to serve as the general contractor for the construction of a hotel in Berkely Heights, New Jersey. Tocci hired Quality Construction Heating and Air, Inc. as the subcontractor for the HVAC systems. Quality Construction hired Trane "to design, fabricate, furnish, and test the HVAC equipment," including the chillers. Dkt. 1, ¶ 8.

Trane was supposed to deliver the chillers in August 2016, but Trane had not yet delivered the chillers by early February 2017. At that time, Trane told Tocci that Quality Construction had not made the downpayment for the chillers, and Trane would not make and deliver the chillers until it received the down payment. "Tocci then requested, and Trane agreed, that Tocci could acquire the Chillers and remaining equipment needed for the Project directly from Trane." *Id.* ¶ 28.

On February 21, Trane filed a construction lien against the hotel project, alleging that it was owed $469,667.15. The following week, Connell issued a notice of termination to Tocci.

2

The notice included allegations based on statements from Trane that Tocci had overbilled for Trane's work and that Tocci had failed to contact Trane about purchasing the chillers.

In May 2017, Tocci initiated arbitration proceedings against Connell. Other contractors were part of that arbitration, but Trane was not one of them. (The parties do not say why Trane was excluded.)

In 2023, while the arbitration was pending, Tocci filed this lawsuit against Trane. Shortly thereafter, the court stayed the case at the parties' request pending a decision in the arbitration. Earlier this year, the arbitration panel found that Connell had wrongfully terminated its contract with Tocci, awarding Tocci more than $11 million in damages and more than $2 million in attorney fees. This court then lifted the stay, and Trane moved for judgment on the pleadings.

Tocci is incorporated in Massachusetts, and its principal place of business is also in Massachusetts. Trane is incorporated in Delaware, and its principal place of business is in North Carolina.[1] Tocci seeks more than $1 million in damages, so it is reasonable to infer that more than $75,000 is in controversy.

---

[1] Trane's state of incorporation is not identified in the complaint, Trane's answer, or Trane's corporate disclosure form. However, other cases state that Trane is incorporated in Delaware, *see, e.g.*, *Montgomery Bank, N.A. v. Alico Rd. Bus. Park, LP*, No. 2:13-CV-802-FTM-29, 2013 WL 6231363, at *2 (M.D. Fla. Dec. 2, 2013), and that is confirmed by the website for the Delaware Secretary of State, *see* https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch. aspx. Neither party is incorporated in Wisconsin, neither party is headquartered here, and the hotel project is in New Jersey, raising the question of why the lawsuit was filed here. The parties do not answer this question directly, but Tocci says in its brief that Trane's "administrative offices were based in Wisconsin, and its administrative processes for issuing invoices and lien waivers were undertaken in Wisconsin." Dkt. 28, at 38. Regardless, personal jurisdiction and venue are waivable issues. *See York Group, Inc. v. Wuxi Taihu Tractor Co., Ltd.*, 632 F.3d 399, 403 (7th Cir. 2011); *Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). Trane does not seek dismissal or transfer for lack of jurisdiction or improper venue, so the court does not consider those issues.

The court will discuss additional allegations as they become relevant to the analysis.

## ANALYSIS

Tocci asserts four claims against Trane: (1) tortious interference with Tocci's contract with Connell; (2) breach of an implied contract to sell the HVAC equipment directly to Tocci; (3) promissory estoppel based on a promise not to file a lien; and (4) indemnity for damages caused by Trane's construction lien. Trane seeks dismissal of all these claims, contending that all of them are untimely, Tocci has not stated a claim for some of the claims, and the arbitration proceeding bars the tortious interference claim. Trane also contends that issue preclusion bars Tocci "from seeking the same damages sought, litigated, and considered by the arbitration panel." Dkt. 27, at 57.[2]

To state a claim, the plaintiff must provide fair notice of its claim and "plead a plausible claim for relief," *Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023), which means that the allegations in the complaint raise a right to relief above the speculative level, *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). Stated another way, the plaintiff must "present a story that holds together" under the relevant law. *Taylor v. Salvation Army National Corp.*, 110 F.4th 1017, 1028 (7th Cir. 2024). The court may not dismiss a claim based on an affirmative defense such as the statute of limitations or issue preclusion unless it is clear from the face of the complaint that the defense applies. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

---

[2] Citations to documents filed on the docket reflect the page numbers as they appear on the headers in the court's electronic case file, not the page numbers on the documents themselves.

A. **Tortious interference**

Tocci alleges that Trane made various misrepresentations about Tocci to Connell, causing Connell to terminate its contract with Tocci. Specifically, Tocci alleges that Trane told Connell that "Tocci had not contacted Trane or made any arrangements to hire Trane to complete Trane's Work for the Project" and that Trane "misrepresent[ed] the value of Trane's Work completed and the balance owed to Trane in its Construction Claim for Lien." Dkt. 1, ¶ 56. Trane contends that Tocci's tortious interference claim fails for two reasons: (1) the statute of limitations has run; and (2) the claim is barred under the doctrine of issue preclusion because the arbitration panel determined that Trane's conduct did not cause the termination of Tocci's contract with Connell. The court agrees with the first contention, so it is not necessary to consider the second.[3]

The parties agree that Wisconsin's three-year statute of limitations for tortious interference with a contract should apply. Dkt. 27, at 18–19 and Dkt. 28, at 40. Trane says that the statute of limitations began running as early as February 2017 and no later than January 2020; Tocci says that the limitations period did not begin until February 2022. Tocci filed the lawsuit in February 2023, so the claim is untimely if either of the dates asserted by Trane is correct.

In Wisconsin, the statute of limitations for tortious interference begins to run when the cause of action accrues, which is when "the plaintiff discovers, or with reasonable diligence should have discovered, the injury and that the defendant's conduct probably caused that

---

[3] In its reply brief, Trane contends for the first time that Tocci's complaint does not state a claim for tortious interference. Dkt. 36, at 23–26. The court is dismissing this claim on other grounds, so the court need not decide whether Trane forfeited that argument by failing to raise it in the opening brief.

5

injury." *Munger v. Seehafer*, 2016 WI App 89, ¶ 20, 372 Wis. 2d 749, 890 N.W.2d 22. In this case, the alleged injury is Connell's termination of its contract with Tocci, and the alleged cause of that injury is misrepresentations made by Trane to Connell about Tocci. Dkt. 1, ¶ 56. In its complaint, Tocci admits that Connell informed Tocci in February 2017 both that Connell was terminating its contract and that Trane had made allegations against Tocci, including that Tocci had not had any contact with Trane about the chillers and that Tocci had overbilled for Trane's work. *Id.* ¶ 39. These alleged misrepresentations are the basis for Tocci's tortious interference clam, *see id.* ¶ 56, so Tocci's own allegations show that it had notice in February 2017 of both its injury and that Trane's conduct probably caused the injury.

Tocci's only response to this is that it "did not learn about how and when Trane and Connell entered into their contract until testimony of Trisha Mehis [Connell's senior project manager] during the Arbitration on February 11, 2022." Dkt. 28, at 47. Tocci does not explain what it means by this or why it matters "how and when Trane and Connell entered into their contract." Tocci's claim is that Trane interfered with *Tocci's* contract with Connell. According to Tocci's own allegations, Connell and Trane entered into their own contract *after* Connell had already terminated its contract with Tocci, *see* Dkt. 1, ¶¶ 39–47, so the contract between Connell and Trane could not have caused the termination. And even if it had, Tocci admits that it learned about Connell's contract with Trane in January 2020, *id.* ¶ 47, which is still more than three years before Tocci filed this lawsuit. The details about how or why Connell and Trane made their own arrangements were not necessary to give Tocci notice of its injury or its cause.

The allegations in the complaint show that the statute of limitations ran on Tocci's tortious interference claim before Tocci filed this lawsuit. So the court will dismiss this claim.

6

B. **Breach of implied contract**

Tocci contends that it had an implied contract with Trane related to Tocci purchasing the chillers directly from Trane and that Trane breached that contract by entering into a different contract to sell the chillers directly to Connell. Dkt. 1, ¶¶ 50–53. Trane contends that the contract claim should be dismissed on three grounds: (1) the statute of limitations has run; (2) Tocci has not alleged the existence of an implied contract with Trane; and (3) any contract is barred by the statute of frauds. This claim is also untimely, so the court need not consider the other issues.

The parties agree that New Jersey law provides the statute of limitations for the contract claim. *See* Dkt. 27, at 22–23 and Dkt. 28, at 32–36. The dispute is whether the appropriate limitations period is six years, which applies to services contracts, N.J.S.A. 2A:14-1, or four years, which applies to contracts for goods, N.J.S.A. 12A:2-725(1). When a contract involves both goods and services, the question is which aspect of the contract is predominant. *Quality Guaranteed Roofing, Inc. v. Hoffmann-La Roche, Inc.*, 694 A.2d 1077, 1079 (N.J. Super. Ct. App. Div. 1997). In other words, the question is whether the contract is accurately characterized as one for the sale of goods with incidental services, or as one for services in which materials are provided as part of the service. *Id.* For example, in *Quality Guaranteed,* the court held that a contract to install a new roof was a predominantly a contract for services. But in *Docteroff v. Barra Corp. of America*, the court held that a contract to supply roofing materials with a guarantee to repair defective materials was predominantly a contract for goods. 659 A.2d 948, 949 (N.J. Super. Ct. App. Div. 1995).

Tocci points out that it is a question of fact whether a contract is predominantly for goods or services, *see Integrity Material Handling Sys., Inc. v. Deluxe Corp.*, 722 A.2d 552, 555

(N.J. Super. App. Div. 1999), so the court should not decide this issue without discovery. But even questions of fact can be decided at the pleading stage when the plaintiff alleges facts showing that it cannot succeed or if it otherwise fails to state a plausible claim. *See O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 342 (7th Cir. 2018); *Thomson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004). That is what has happened here.

Tocci's complaint includes two sentences about the nature and scope of its alleged contract with Trane. In the first sentence, Tocci alleges that it "requested, and Trane agreed, that Tocci could acquire the chillers and remaining equipment needed for the project directly from Trane." Dkt. 1, ¶ 28. The second sentence is virtually identical: "Trane agreed that Tocci could acquire the Chillers and remaining undelivered equipment for the Project from Trane." *Id.* ¶ 50. The court will assume for the purpose of the motion to dismiss that Tocci's allegations adequately allege the formation of a contract with Trane. But the scope of any contract was limited to providing "the chillers and remaining equipment;" there is no reference to any services.

Tocci cites cases involving installation or engineering of a product in which courts have concluded that the predominant purpose of the contract was to provide a service. *See, e.g., DiIorio v. Structural Stone & Brick Co.*, 845 A.2d 658, 662 (N.J. Super. Ct. App. Div. 2004) (contract for construction of home was a services contract despite incidental sale of stone); *but see Meyers v. Henderson Constr. Co.,* 370 A.2d 547 (N.J. Super. Ct Law Div. 1977) (UCC governed purchase and installation of overhead doors because installation services were "incidental" to the sale aspects of the contract). Tocci then cites a proposal and a payment application from Trane discussing services such as installation and design engineering. Dkt. 32

and Dkt. 33.[4] But Trane submitted the proposal and payment application to Connell, not Tocci. Tocci does not allege that it had any agreement *with Trane* to install or design anything.

Perhaps it could be inferred that design was implicit in any agreement with Tocci because the chillers were being custom made for Connell. *See* Dkt. 1, ¶ 8 (Quality Construction originally hired Trane to "design, fabricate, and furnish" the HVAC equipment). But that would not make the contract between Tocci and Connell predominantly one for services. The cases that Tocci cites involved companies that were responsible for designing or engineering only. *See Bd. of Trs. of Union Coll. v. Kennerly, Slomanson & Smith*, 400 A.2d 850, 852 (N.J. Super. Ct. Law. Div. 1979) (defendant was responsible for "designing and furnishing specifications for the lighting system"; another party was responsible for manufacturing); *R.J. Longo Const. Co. v. Transit Am.*, Inc., 921 F. Supp. 1295, 1298 (D.N.J. 1996) (defendant was responsible for designing a "specialized rail car"; third party was responsible for manufacturing). Tocci cites no authority for the view that a contract to buy equipment becomes a contract for services simply because it was custom made. Rather, a federal court applying New Jersey law recently rejected that view, observing that "courts have found that contracts, like the one here, for custom-designed manufactured equipment which also provide for services like testing and training are goods contracts governed by the UCC." *Talon Indus., LLC v. Rolled Metal Prods., Inc.*, No. CV 15-4103 (CCC), 2022 WL 3754800, at *5 (D.N.J. Aug. 30, 2022) (*citing Propulsion Techs. Inc. v. Attwood Corp.*, 369 F.3d 896, 901 (5th Cir. 2004); *KSW Mech. Servs. v. Johnson Controls, Inc.*, 992 F. Supp. 2d 135, 141 (E.D.N.Y. 2014); *Machine-Outils Henri*,

---

[4] Trane asks the court to strike the documents that Tocci filed with its opposition brief on the ground that they are outside the scope of the pleadings. The court need not decide that issue because the contract claim is untimely even if the documents are considered.

9

*Ltee v. Morey Machinery, Inc.*, No. 94-cv-880, 1996 WL 254863, at *6 (S.D.N.Y. May 14, 1996)).

The Court of Appeals for the Seventh Circuit adopted a similar view in *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, concluding that custom-made software was a good under the UCC:

> It's no different than if [the plaintiff] were buying an automobile from [the defendant], and [the defendant] invoiced [plaintiff] $20,000 for the car and $1,000 for labor involved in customizing it for [the plaintiff's] special needs. It would still be the sale of a good within the meaning of the UCC. We doubt that it should even be called a "hybrid" sale, for this would imply that every sale of goods is actually a hybrid sale, since labor is a service and labor is an input into the manufacture of every good.

148 F.3d 649, 655 (7th Cir. 1998). That reasoning applies in this case as well. The chillers and other equipment that Tocci wanted to purchase from Trane are still goods, even if they were custom made. In fact, New Jersey defines "goods" under the UCC as including "specially manufactured goods." N.J.S.A. 12A:2-105(1).

Even if the court were to consider Trane's contractual relationships with Quality Construction or Connell as indicative of the scope of Tocci's contract with Trane, those relationships would not be helpful for Tocci. The affidavits from Trane attached to Tocci's complaint refer to Trane as the "supplier." Dkt. 1-3. The complaint similarly refers to Trane this way. Dkt. 1, ¶ 8. The complaint also repeatedly refers to Tocci making payments to Quality Construction "for Trane's Chillers," not for a service. Dkt. 1, ¶ 16; *see also id.* ¶ 21. Trane's proposal to Connell focuses on the "mechanical equipment" that Connell will be providing. Dkt. 32, at 3. Even the references to services are noted in the context of providing a finished product. For example, the proposal states that "Trane has included factory-trained BAS Project Management, Design Engineering, and Field Engineering labor *required to deliver a functional*

10

*control system* as specified." *Id.* at 5. More than 75 percent of Trane's approximately $500,000 request for payment to Connell is for "equipment" or "material." Dkt. 33, at 4. This shows that that even Trane's contracts with Quality Construction and Connell were primarily for goods rather than services. *See Integrity*, 722 A.2d at 555 (in deciding whether goods or services predominate, court considers language used in the contract, surrounding circumstances, and the compensation structure of the contract).

Tocci also repeatedly states in its brief that the chillers were to be a "permanent improvement" to real property, Dkt. 28, at 34–35, but Tocci does not explain the significance of that observation. It is true that the UCC does not apply to real property, *see DiIorio*, 845 A.2d at 662, but the definition of "goods" includes "all things . . . which are movable at the time of identification to the contract for sale." N.J.SA. 12A:2-105(1). There is no dispute that the chillers were movable at the time of sale, so they qualify as goods, even if they were going to be part of a permanent improvement.

The court concludes that the UCC applies to the alleged contract between Tocci and Trane. This means that a four-year statute of limitations applies to Tocci's contract claim. *See* N.J.S.A. 12A:2-725(1). The discovery rule does not apply to UCC claims; rather, the statute of limitations begins to run when the alleged breach occurs, "regardless of the aggrieved party's lack of knowledge of the breach." N.J.S.A. 12A:2-725(2). Tocci contends that the breach occurred when Trane entered into its contract with Connell in 2017, and this lawsuit was not filed until 2023, so the court will dismiss the implied contract claim as untimely.

C.  **Promissory estoppel**

Tocci asserts two promissory estoppel claims in its complaint. First, it asserts a claim based on the same facts as the implied contract claim, alleging that Trane promised to sell the

11

chillers directly to Tocci. Dkt. 1, ¶ 64. Trane moves to dismiss that estoppel claim on the same grounds as the contract claim, and Tocci does not respond to that argument or otherwise discuss that estoppel claim in its brief. So the court will construe's Tocci silence to mean that Tocci concedes that that promissory estoppel claim rises and falls with the implied contract claim, and the court will dismiss that claim. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (the plaintiffs' "failure to offer any opposition to [the defendants'] statute of limitations argument constituted a waiver").

Second, Tocci alleges that Trane made representations that it had been paid for the chillers and that it waived its lien rights. Dkt. 1, ¶ 66. Tocci also alleges that it relied on those representations by continuing to make payments to Quality Construction for the chillers. Trane seeks dismissal of this claim on two grounds: (1) the statute of limitations has run; and (2) Tocci has not alleged a broken promise.

1.  **Statute of limitations**

The parties agree that New Jersy law governs the promissory estoppel claim. Trane contends that the court should apply the four-year limitations period for UCC claims, *see* N.J.S.A. 12A:2-725(1); Tocci contends that the court should apply the six-year limitations period that applies to most other contract claims, *see* N.J.S.A. 2A:14-1. The parties agree that the choice is dispositive. If the six-year limitations period applies, the claim is timely; if the four-year limitations period applies, the claim must be dismissed.

Neither party cites a New Jersey statute that expressly establishes a limitations period for promissory estoppel claims. Tocci cites *Kopin v. Orange Products., Inc.*, which holds that the six-year limitations period for most contract claims in N.J.S.A. 2A:14-1 also applies to quantum meruit claims. 688 A.2d 130, 141 (N.J. Super. Ct. App. Div. 1997). Trane cites no authority

but contends that the UCC should apply because the estoppel claim "involves the sales of the chillers to Quality Construction and then to Tocci." Dkt. 27, at 24.

The court concludes that the six-year limitations period applies. The promise at issue was not for the sale of chillers. Rather, the alleged promise was to waive Trane's lien rights. Trane does not explain why the UCC should apply to a promise simply because there was a related but separate contract for the sale of goods.

In the absence of a statute that applies to promissory estoppel specifically, it makes sense to apply the limitations period for general contract claims because "promissory estoppel is a cause of action closely related to breach of contract." *Leonardis v. Burns Int'l Sec. Servs.*, Inc., 808 F. Supp. 1165, 1182 (D.N.J. 1992). Courts interpreting New Jersey law have consistently applied the six-year limitations period in N.J.S.A. 2A:14-1 to promissory estoppel claims. *See Motamed v. Chubb Corp.*, No. CV 15-7262, 2020 WL 7227254, at \*6 (D.N.J. Apr. 7, 2020*); Richer Mktg. Inc. v. Fairfield Gourmet Foods Corp*., No. 15-CV-6793, 2017 WL 3641742, at \*2 (D.N.J. Aug. 24, 2017); *Gashlin v. Prudential Ins. Co. of Am. Ret. Sys. for U.S. Emps. & Special Agents*, 286 F. Supp. 2d 407, 421 (D.N.J. 2003). Courts in other states, including in Wisconsin, have done the same thing. *See Sweeney v. Frank Liquor Co. Inc.*, 2021 WI App 67, ¶ 17, 2021 WL 3412757 (non-precedential) (citing *Boldt v. State*, 101 Wis. 2d 566, 578, 305 N.W.2d 133 (1981)).

Trane's statute of limitations argument is based on its contention that the limitations period is four years, so the court will not dismiss this claim as untimely.

2. **State a claim**

Promissory estoppel applies when the plaintiff suffers a detriment because the defendant broke a promise on which the plaintiff reasonably relied. *See Toll Bros. v. Bd. of Chosen*

13

*Freeholders of Cnty. of Burlington*, 944 A.2d 1, 19 (N.J. 2008). In this case, the alleged promises not to file a lien were included in "supplier affidavits" that Trane submitted to Quality Construction. Tocci contends, and Trane does not dispute, that the supplier affidavits qualify as promises to Tocci as well as Quality Construction.

Trane contends that Tocci has not stated a claim for promissory estoppel because it has not identified a promise in the supplier affidavits that Trane broke. Rather, Trane contends that the promise in the supplier affidavits not to file a lien were contingent on Trane being paid for its work, and Tocci does not allege that Trane had been paid for its work at the time Trane filed the lien. Tocci does not directly respond to this argument but instead says that Trane represented in its affidavits that it *had* been paid, and Tocci was entitled to rely on those representations.

Each party relies on different portions of the supplier affidavits, which appear to be boilerplate documents. Trane is correct that the affidavits state that Trane will waive its lien rights "*except for* any portion of the above amount due not received." *See, e.g.*, Dkt. 1-3, at 3, ¶ 5 (emphasis added). But it is not clear what "the above amount" is referring to. Some of the affidavits do not include dollar amounts. Some (but not all) of the affidavits are stamped with the statement, "This waiver is contingent upon the Trane Company receiving a check in the amount of," followed by a dollar amount. *See, e.g.*, Dkt. 1-3, at 4. But even those stamps are at the bottom of the document, not "above" the statement about Trane's lien rights.

For its part, Tocci cites the statement, "all labor, services, materials, fixtures, apparatus and/or equipment, and all appliable taxes, fees, and benefits, have been paid in full through the above Application for Payment." That statement is included in paragraph four of each of the

14

supplier affidavits. Tocci says it was entitled to rely on that statement as a representation that Trane was waiving its lien rights because it had been paid.

The different provisions cited by the parties offer different ways of interpreting the affidavits. The provisions cited by Trane suggest that Trane was still waiting for payment; the provisions cited by Tocci suggest that Trane had already received payment. Neither party acknowledges the language in the affidavits cited by the other party. Rather, both sides contend that that the affidavits unambiguously show that Trane did or did not waive its lien rights. So the parties failed to address the key issue raised by the affidavits: in light of the seemingly inconsistent language in the affidavits, was it reasonable for Tocci to rely on the statements that Trane had already been paid?

The court won't decide a disputed issue that the parties failed to brief. The bottom line is that one possible reading of the affidavits is that Trane was waiving its lien rights for work that had been performed up to the date in the affidavit. If that reading was reasonable under the circumstances, Trane could be held liable for promissory estoppel, so the court will deny the motion to dismiss. The parties are free to seek summary judgment on the issue of reasonable reliance if they believe that issue can be decided as a matter of law on the basis of undisputed facts.

**D. Indemnity**

Tocci says that Trane agreed in its supplier affidavits to indemnify Tocci for all liens and claims arising out of Trane's work and that Trane breached that agreement by filing a construction lien. The parties agree that New Jersey law governs the indemnity claim.

Trane seeks dismissal of this claim on two grounds: (1) the statute of limitations has run; and (2) the indemnity agreement applied only to work that was paid for, and it is

15

undisputed that Trane did not receive payment for the chillers. The court agrees with the second argument, so it is not necessary to consider the first.

Each of Trane's supplier affidavits included the following language: "The undersigned agrees to waive, indemnify, defend, and save harmless . . . Tocci Building Corporation . . . from all liens, claims and demands, and all expenses incurred, including attorneys' fees and costs of defense, for or on account of or in any way arising out of the work of the undersigned." *See, e.g.*, Dkt. 1-3, at 5, ¶ 6. Tocci says that the duty to indemnify was triggered by "claims asserted by Connell against Tocci related to Trane's Work furnished for the Project and the filing of its Construction Lien Claim." Dkt. 1, ¶ 71.

Trane says that the duty to indemnify was triggered only if Trane received payment. It cites the following language at the beginning of the affidavits: "The undersigned, for and in consideration of the payments made to it by Tocci Building Corporation or to a subcontractor, materialman or supplier of the undersigned, for labor, services, materials, fixtures. Apparatus and/or equipment furnished for the Project warrants, represents and guarantees as follows . . . ." Dkt. 1-3, at 3. Trane says that Tocci does not allege that Trane received payment, so Trane had no duty to indemnify.

Tocci's only response to this is the same one Tocci asserted in support of its promissory estoppel claim: Trane represented in the supplier affidavits that it had received payment, and Tocci was entitled to rely on those representations. But as Tocci acknowledges, an indemnity claim has the same requirements as any other contract claim. Dkt. 28, at 63. The key difference between a contract claim and a promissory estoppel claim is that a contract claim requires consideration. *See Fazio v. Altice USA*, 337 A.3d 304, 311 (N.J. 2025). Under a promissory estoppel theory, reliance is a substitute for consideration. *Goldfarb v. Solimine*, 245 A.3d 570,

16

577 (N.J. 2021). For the purpose of Tocci's indemnity claim, it does not matter whether Trane *told* Tocci that Trane had received consideration; the question is whether Trane *did* receive consideration. Tocci does not allege that Trane received payment before Trane filed the lien, so Tocci's indemnity claim fails.

**E. Limitations on damages**

Trane contends that the doctrine of issue preclusion bars Tocci from seeking "the same damages sought, litigated, and considered by the Panel as part of the arbitration." Dkt. 27, at 57. The court is dismissing all of Tocci's claims except the promissory estoppel claim, so it is not necessary to consider Tocci's arguments about those other claims. As for the estoppel claim, Trane includes the following paragraph in its brief:

> Tocci seeks to recover the amount Connell paid Trane to satisfy Trane's lien. This theory of recovery and damages claim is not recognized at law or in equity and is utterly without merit. Tocci also once again seeks the full value of the remainder of its contract with Connell, which the Panel already awarded.

Dkt. 27, at 58. Trane does not elaborate, but its argument seems to have two parts: (1) the amount Connell paid to Trane is not a proper measure of Tocci's damages; and (2) Tocci may not recover damages in this case that were already awarded in the arbitration.

Neither of the issues Trane raises are about issue preclusion. Rather, the first issue is about the scope of relief available for promissory estoppel; the second is about double recovery. Tocci concedes that it is not entitled to double recovery and that it will have the burden to show that any damages sought in this case were not previously awarded. Dkt. 28, at 79. But Tocci says that it is premature to consider damages issues now.

The court agrees that it is not necessary now to identify all categories of damages that Tocci may or may not be entitled to recover. The general rule is that a plaintiff who prevails

17

on a promissory estoppel claim is limited to reliance damages, which are "measured by the extent of the promisee's reliance," or, in other words, "what losses plaintiff suffered as a result of his relying on defendant's later-broken promise." *Goldfarb*, 245 A.3d at 572, 578. In this case, those damages would likely include the money Tocci paid to Quality Construction for the chillers in reliance on Trane's alleged promise not to file a lien. Trane does not contend that Tocci recovered that money in the arbitration proceedings, and Trane does not otherwise identify any reason such damages would be precluded in this case.[5] So the court cannot dismiss the promissory estoppel claim on the ground that Tocci has not identified any potentially recoverable damages. Any arguments about the precise scope of damages that are available to Tocci can wait for summary judgment or trial.

ORDER

IT IS ORDERED that defendant Trane U.S. Inc.'s motion to dismiss is GRANTED in part and DENIED in part. Tocci Building Corporation's claims for tortious interference, breach of implied contract, indemnity and its promissory estoppel claim based on Trane's alleged promise to sell the chillers directly to Tocci are DISMISSED with prejudice for failure to state

---

[5] In a footnote, Trane says that any claim "seeking to recover from Trane the money it paid Quality . . . should also be dismissed as insufficiently pled and precluded." Dkt. 27, at 58. But Trane does not explain the basis for this contention, so it is forfeited for the purpose of Trane's motion to dismiss. In a different part of its brief, Trane cites a default judgment that Tocci obtained against Quality Construction. Dkt. 27, at 49 (citing *Tocci Building Corp, Inc. v. Quality Construction Heating & Air, Inc.*, No. 17-cv-3764 (D.N.J. Feb. 26, 2018), Dkt. 8. But Trane does not contend that the default judgment has any effect on Tocci's right to recover damages in this case, so the court does not consider that issue.

a claim upon which relief may be granted. The motion is DENIED as to Tocci's promissory estoppel claim based on Trane's alleged promise not to file a lien.

    Entered November 14, 2025.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge