IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TOCCI BUILDING CORPORATION,

Plaintiff,

v.

TRANE U.S. INC. a/k/a TRANE COMPANY,

Defendant.

OPINION and ORDER

23-cv-110-jdp

This case arises out of a failed contracting and subcontracting relationship among four entities. Only two of those entities are parties to this case. Non-party Connell Hospitality, Inc. was the developer of a hotel project in New Jersey. Plaintiff Tocci Building Corporation was the general contractor. Non-party Quality Construction Heating and Air, Inc. was a subcontractor that Tocci hired to provide HVAC services. Defendant Trane U.S. Inc. was a subcontractor that Quality hired to provide HVAC equipment, including two chillers.

The relationship unraveled when Quality fell behind on its payments to Trane, which led Trane to assert a lien against the project. After Connell found out about the lien, it terminated Tocci's contract. Tocci successfully challenged the termination in arbitration and was awarded damages against Connell. Tocci also obtained two default judgments against Quality.

In this case, Tocci says that it still has not been made whole and that Trane is responsible for the rest of Tocci's losses. Tocci alleges that it did not know that Quality was behind on its payments to Trane, and it relied on Trane's representations that Quality was current in its payments and that Trane had waived its lien rights against the project. Tocci says it could have terminated Quality and avoided the lien if Trane had been truthful.

At the pleading stage, the court dismissed Tocci's claims for tortious interference with a contract, breach of implied contract, and indemnity. But the court allowed Tocci to proceed on a promissory estoppel theory.

Trane moves for summary judgment on numerous grounds, but the court need not consider all of them. One of Tooci's promissory estoppel claims fails because it is untimely; the other fails because Tocci has not adduced any evidence that Trane broke its promise. So the court will grant Trane's motion for summary judgment.

Three other motions are before the court. The court will deny as moot Trane's motion to strike the report of Tocci's expert witness because the court did not need to consider that report in deciding Trane's summary judgment motion. The court will also deny as moot Trane's motion for a protective order from imminent depositions. The court will reserve a ruling on Trane's motion for sanctions because the parties are still briefing that motion. The court may enter judgment even while the sanctions motion is pending. *See Cleveland v. Berkson*, 878 F.2d 1034, 1036 (7th Cir. 1989).

PRELIMINARY ISSUE

On page 46 of its 61-page brief, Tocci contends for the first time that summary judgment should be denied as premature because discovery is ongoing. The court will deny this request.

A party who believes it does not have the evidence it needs to respond to a summary judgment motion must file an affidavit under Federal Rule of Civil Procedure 56(d) that does the following: (1) identifies specific evidence that the party needs; (2) explains how that evidence would defeat the pending summary judgment motion; and (3) shows that the party

exercised reasonable diligence in attempting to conduct discovery sooner. *See Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1219 (7th Cir. 2023); *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019); *PlaDavis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005); *United States v. All Assets & Equipment of West Side Building Corp.*, 58 F.3d 1181, 1190–91 (7th Cir. 1995). The party should file a Rule 56(d) motion promptly after the summary judgment motion is filed rather than bury an argument in the middle of an opposition brief that the court will not see until summary judgment is fully briefed. *See Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006); *De Jesus v. De Jesus*, No. 11-cv-579-bbc, 2012 WL 13042522, at *7 (W.D. Wis. Apr. 3, 2012).

Tocci did not file an affidavit, and it does not explain how any evidence it has not yet received would help defeat Trane's summary judgment motion. So Tocci has not shown that it is entitled to relief under Rule 56(d).

## BACKGROUND

Tocci did not file any of its own proposed findings of fact, so the undisputed facts come from Trane's proposed findings of fact. Tocci did cite its own facts in its brief and in response to Trane's proposed findings of fact. But the court's summary judgment procedures make it clear that the court need not consider new facts contained in responses to proposed findings of fact or facts cited only in a brief.[1] So the court considered Tocci's responses only for

[1] Motions for Summary Judgment I.A.4, *attached to* Dkt. 21 ("Your brief is the place to make your legal argument, not the place to introduce facts into the record."); *id.* II.D.3 ("[D]o not respond to proposed facts with additional facts that are not directly responsive to the proposed fact. The court will disregard any new facts that are not directly responsive to the proposed fact.").

determining whether Trane's facts were disputed. And the court disregarded facts that were cited only in a brief.

In determining whether a proposed fact was disputed, the court disregarded responses that "denied" a proposed finding of fact without specifying what was incorrect about the fact or without identifying specific evidence that placed the fact in dispute.[2] The court also disregarded lengthy argument that Tocci included in its responses about the "implications" of Trane's proposed findings of fact. The court's rules are clear about that issue as well: "The fact documents should not be inflated with lengthy argument. If the responses to fairly proposed facts, or the replies to fairly disputed facts, are inappropriately argumentative, then the court may strike the offending response, or in extreme cases, an offending pleading." Motions for Summary Judgment, at 2, *attached to* Dkt. 21.

Trane's proposed findings of fact and Tocci's responses are voluminous, spanning 157 pages and 330 paragraphs. Dkt. 91. But the court need not discuss most of those facts to resolve Trane's summary judgment motion. So the court provides only a basic overview and will discuss more facts as they become relevant to the analysis. The following facts are undisputed unless otherwise noted.

In 2015, Connell Hospitality hired Tocci as the general contractor for the construction of a hotel project in New Jersey. Shortly thereafter, Tocci hired Quality to provide HVAC services. Quality then hired Trane to fabricate, furnish, and test HVAC equipment, including two chillers.

---

[2] *See* Motions for Summary Judgment II.C. ("The court will conclude that a proposed fact is undisputed unless the responding party explicitly disputes it and either identifies contradictory evidence in the record, or demonstrates that the proponent of the fact does not have admissible evidence to support it.").

Trane issued at least seven invoices to Quality during the project. (Tocci says that Trane issued an eighth invoice for the chillers in April 2015, but even if that issue is disputed, it is not a material dispute, for reasons the court will discuss in the analysis.) Quality paid Trane the first four invoices issued between March 2016 and October 2016, but it did not pay the last three invoices issued between November 2016 and February 2017. Quality also did not pay for the chillers, even though Tocci had given Quality the funds for that purpose.

On February 21, 2017, Trane filed a lien against the construction project for the amount of the last three invoices. The lien did not include the amount for the chillers. On February 22, Connell issued a notice of termination to Tocci. The cited grounds for termination included Tocci's failure to install the chillers, Tocci's failure to pay the chiller deposit, billing discrepancies between what Tocci had requisitioned for Trane's scope and what Trane had been paid, and broader project management failures. Connell discharged the lien a month later by paying the amount of the lien.

Tocci initiated arbitration proceedings against Connell. The panel concluded that Connell's termination was wrongful, and it awarded Tocci approximately $8.2 million in principal damages, $3.2 million in prejudgment interest, and $2.2 million in attorney fees. Tocci also filed two lawsuits against Quality in federal court and obtained default judgments in the amounts of $511,680 and $501,835.

Tocci is a citizen of Massachusetts, Trane is a citizen of Delaware and North Carolina, and the amount in controversy is more than $75,000. So the court can exercise jurisdiction under 28 U.S.C. § 1332.

## ANALYSIS

Tocci says that Trane breached two types of promises: (1) that Quality was making all of its payments for the chillers; and (2) that Trane would not file a lien against the construction project. Trane seeks summary judgment because Tocci's claim is untimely, because Tocci cannot satisfy any of the elements of a promissory estoppel claim, and because Tocci has not identified any remedy that it is entitled to.

In the context of the motion to dismiss, both sides assumed that New Jersey law applies to Tocci's promissory estoppel claim. This makes sense because the parties' dispute is about a construction project in New Jersey. *Cf. NCR Corp. v. Transp. Ins. Co.*, 2012 WI App 108, ¶ 13, 344 Wis. 2d 494, 823 N.W.2d 532 (contract claims are governed by law of the state with the most significant contacts with the state). In their summary judgment submissions, both sides cite mostly New Jersey law, but they occasionally cite Wisconsin law for different propositions. Neither party explains why Wisconsin law should apply rather than New Jersey law, so the court will continue to apply New Jersey law.

On a motion for summary judgment, the question is whether there are any genuine disputes of material fact. Fed. R. Civ. P. 56(a). A factual dispute is genuine if it is based on admissible evidence that actually contradicts opposing evidence. *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012). A genuine factual dispute is material if it could make a difference to the outcome of the case, or, in other words, a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

The court concludes that Tocci has not raised a genuine issue of material fact regarding either of its promissory estoppel claims and that Trane is entitled to judgment as a matter of law. One of the claims is untimely and the other fails because the undisputed facts show that Trane did not break the alleged promise.

**1. Statute of limitations**

Tocci filed this case on February 16, 2023. The court previously concluded that the statute of limitations for Tocci's promissory estoppel claims is six years. Dkt. 50, at 12–13. So any claim that accrued before February 16, 2017, is untimely.

Neither party discusses the standard for accrual of a promissory estoppel claim in New Jersey. But the general rule for contract claims is that they accrue at the moment of the breach. *Peck v. Donovan,* 565 F. App'x 66, 69 (3d Cir. 2012) (applying New Jersey law). This court previously concluded that the promissory estoppel claim's statute of limitations should be the same as a contract claim. Dkt. 50, at 12–13. So it follows that Tocci's promissory estoppel claim accrued when Tocci alleges that Trane broke its promise.

As previously discussed, Tocci says that Trane made two types of promises: (1) that Quality was making all of its payments for the chillers; and (2) that Trane would not file a lien against the construction project. Trane's statute-of-limitations argument does not address the second type of promise, and it is undisputed that Trane did not file the lien until February 21, 2017, which is within the six-year limitations period. So the court will not dismiss that claim as untimely.

As for the alleged promise that Quality had paid for the chillers, it is difficult to identify when the promise was breached because it is undisputed that Quality had *not* paid for the chillers at the time that Tocci says that Trane represented that Quality had already paid. This

dovetails with another legal dispute between the parties, which is whether any representations about existing or past facts can qualify as a "promise" for the purpose of a promissory estoppel claim. The general rule across the country appears to be that no, it cannot. Rather, the definition of a promise in the promissory estoppel context is "a manifestation of intention to act or refrain from acting in a specified way." 4 Williston on Contracts § 8.4 (4th ed.); *see also* PROMISE, Black's Law Dictionary (12th ed. 2024) (giving same definition). Representations about past or existing claims are generally the basis for an equitable estoppel or fraud claim, *see In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6,* 252 A.3d 135, 155–56 (NJ 2021), neither of which Tocci is asserting in this case.

The rule in New Jersey is somewhat less clear. Each party cites language from a different case to support an argument that representations of existing facts either can or cannot be the basis for a promissory estoppel. Trane cites *Friedman v. Tappan Dev. Corp*., in which the New Jersey Supreme Court distinguished promissory estoppel from equitable estoppel by stating that, under promissory estoppel, there is

> no representation of an existing fact, but merely that the promisor at the time of making the promise intends to fulfill it. The reliance is on a promise, and not on a misstatement of fact, and so the estoppel is termed "promissory" to mark the distinction.

126 A.2d 646, 654 (1956). Tocci cites *E. A. Coronis Assocs. v. M. Gordon Const. Co*., in which the New Jerey Court of Appeals quoted the above language and then stated: "We see no difference between substantial reliance on a representation or promise as to current or past facts and as to future facts. It is only right and just that a promise a promisor knows will induce action of a substantial character be enforced if it is in fact relied on." 216 A.2d 246, 251 (App. Div. 1966). Neither case was actually about misrepresentations of existing facts, so the statements in both cases were dicta, but later state-court decisions have relied on *Friedman* as

stating the New Jersey rule. *See Rauch v. Rauch*, No. A-4745-14T4, 2017 WL 3722545, at *7 (N.J. Super. Ct. App. Div. Aug. 30, 2017).

Even assuming that misrepresentations about existing facts can serve as the basis for a promissory estoppel claim, the claim is untimely. Misrepresentation claims accrue when the plaintiff discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim. *Catena v. Raytheon Co.*, 145 A.3d 1085, 1090 (App. Div. 2016). Tocci admits that it knew no later than February 2, 2017, that Quality had not paid for the chillers, Dkt 1, ¶ 28, and that was more than six years before Tocci filed this case.

Tocci says that its "injury did not occur until the Arbitration Panel determined that Connell was entitled to an offset of Tocci's claim in the Arbitration, which did not occur until February 14, 2025." Dkt. 78, at 54–55. The court understands Tocci to be contending that it did not suffer an injury by Trane until it learned that it could not recover *all* of its damages from Connell. But Tocci neither cites any evidence that it sought reimbursement for payments to Quality in the arbitration proceeding nor cites any authority for the view that a claim against one party does not accrue until the plaintiff exhausts its remedies against another party. If that were the case, it would mean that a claim for damages caused by multiple parties would never accrue because the plaintiff would not be injured by either party until a claim against the other party failed. That makes no sense, so the court will not adopt that view.

Tocci's claim based on an alleged promise that Quality had paid for the chillers will be dismissed as barred by the statute of limitations.

**2. Lien waiver**

Tocci's remaining claim is that Trane promised in two contexts not to file a lien against the construction project. First, Tocci points to several documents that it prepared and Trane signed called "supplier affidavits." Tocci says that each supplier affidavit included a lien waiver, which it says is the functional equivalent of a promise not to file a lien. Second, Tocci says that Trane promised not to file a lien during a conversation on February 13, 2017.

A promissory estoppel claim has four elements: (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise. *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1324 (App. Div. 1998). Trane contends that Tocci's claims fail on each of these elements. Trane also contends that New Jersey does not allow a party to recover damages for a promise not to file a lien and more generally that the damages Tocci is seeking are not reliance damages. The court concludes that it is not necessary to consider all the elements because Tocci has not adduced evidence that the lien Trane filed was a breach of a promise in the supplier affidavits or any oral promise that Trane made.

Tocci's initial contention is that the court already concluded in the context of ruling on Trane's motion for judgment on the pleadings that "there is a genuine issue of material fact regarding Tocci's promissory estoppel claim." Dkt. 78, at 18–19. That is incorrect. In fact, it would be impossible to determine whether the *evidence* is genuinely disputed when deciding whether *allegations* state a plausible claim. The court's ruling on the motion for judgment on the pleadings was narrow. Specifically, the court observed that the parties offered opposing interpretations of what Trane represented in its supplier affidavits, but the parties "failed to

address the key issue raised by the affidavits: in light of the seemingly inconsistent language in the affidavits, was it reasonable for Tocci to rely on the statements that Trane had already been paid?" Dkt. 50, at 15. The court did not answer that question, instead stating that "the court won't decide a disputed issue that the parties failed to brief," so the parties could revisit the issue at the summary judgment stage. *Id.*[3] From this language, it is clear that the court did not decide any issue that governs the summary judgment decision, and the court will turn to the questions of whether Trane broke a promise made in the supplier affidavits or verbally.

**a. Supplier affidavits**

The court begins with Tocci's argument about the supplier affidavits. These were boilerplate forms that Tocci drafted and required subcontractors and suppliers to submit. Trane submitted six of these to Tocci regarding Quality. Dkt. 1-3. Tocci relies on the following language in the affidavits:

> 4. All labor, services, materials, fixtures, apparatus and/or equipment, and all applicable taxes, fees and benefits, have been paid for in full through the above Application for Payment.
>
> 5. The undersigned hereby waives, releases and dissolves any claims, mechanics liens or rights of lien it has or may have on the Project including the real estate and the improvements thereon on account of labor, services, materials, fixtures, apparatus and/or equipment furnished for the Project through the above Application for Payment Period except for the above Retainage and Disputed Claims, and except for any portion of the above amount due not received, against the Owner, Tocci Building Corporation, and Tocci Building Corporation's surety.

[3] In its summary judgment brief, Tocci quotes a lengthy passage from the court's decision but places an ellipsis where the court stated it would not decide the issue of reasonableness. Dkt. 78, at 18–19. That omission creates a misleading impression about the scope of the decision.

Tocci interprets the above language as representing that Quality had made all of its payments to Trane through the date on the affidavit, so Trane waived its right to assert a lien based on any failure to make those payments. Trane disputes Tocci's interpretation, but even assuming that the interpretation is correct, Tocci's claim fails for a straightforward reason: the undisputed facts show that Trane's lien was not based on a failure to pay any amounts covered by the affidavits.

The following facts are not genuinely disputed:

- The amount of Trane's construction lien was $332,108.48. Dkt. 91, ¶ 205; Dkt. 71-7, at 2.

- The amount on the lien matches the sum of three unpaid invoices that Trane issued to Quality and were dated November 10, 2016 ($265,562.23), February 7, 2017 ($7,908.75), and February 9, 2017 ($58,637.50). Dkt. 91, ¶¶ 107–201; Dkt. 71–2.

- Each of the supplier affidavits that Tocci relies on cover periods before November 1, 2016. Trane did not issue supplier affidavits for any period after that. Dkt. 91, ¶ 126; Dkt. 1-3.

- Trane had received payment for four invoices from before October 31, 2016, totaling at least $469,667.15, and that amount is listed as paid on the lien. Dkt. 91, ¶¶ 188–91; Dkt. 71–7, at 2.

Tocci's promissory estoppel claim rests on the view that Trane had promised not to assert a lien for the amounts covered by the supplier affidavits because Trane had received all payments from Quality that were due up until the date of the affidavit. But the affidavits are clear that any lien waiver applies only "through the above Application for Payment Period," and the latest payment period on the affidavits ends on October 31, 2016.

So there is no evidence that Trane broke a promise contained in the supplier affidavits. The undisputed facts show that Trane filed a lien for unpaid amounts that were not covered by any of those affidavits.

Tocci resists this conclusion on three grounds, but none are persuasive. First, Tocci says that the lien *does* include amounts covered by the affidavits. Tocci's argument on this point is confusing, but the court understands it to be based on the following premises: (1) Trane issued a $602,500 invoice to Quality for the chillers in May 2015, a time that Tocci says is covered by the supplier affidavits; (2) Quality never paid Trane for the chillers; (3) Trane credited later payments that Quality made for other work and equipment to the debt that Quality owed for the chillers; and (4) the amount in the lien necessarily included amounts covered by the supplier affidavits because, at the time Trane filed the lien, Quality still owed Trane more than the amounts identified in the last three invoices.

Tocci cites no evidence that Trane credited any amounts that Quality paid later toward Quality's debt on the chillers. Regardless, the fundamental problem with this argument is that it is contradicted by the lien itself, which states that the lien was for $332,108.48, the exact amount owed on the last three invoices. Even if Quality actually owed Trane more than that, Trane was not required to file a lien for the full amount or to include the oldest debts in the lien. So even if the supplier affidavits promised that Trane would not file a lien based on a failure to pay for the chillers, Tocci's promissory estoppel claim fails because the lien was not based on a failure to pay for the chillers; it was based on Quality's failure to pay later invoices. There was no broken promise.

Second, Tocci makes a closely related allegation that the invoices dated after October 31 included "sums for labor and equipment before that time." Dkt. 78, at 22. But Tocci cites no evidence to support that allegation, even in its brief.

Third, Tocci makes two arguments in its responses to Trane's proposed findings of fact on this issue: (1) Trane's records regarding what Quality owed are incorrect, and Trane

collected $100,000 more than it billed, Dkt. 91, ¶ 205; and (2) Trane's lien omitted the unpaid amounts for the chillers because "Trane was actively leveraging the threat of the lien to negotiate a new, direct contract to sell the chillers to Connell," Dkt. 91, ¶ 207. Regardless of whether either of these allegations is true, they have nothing to do with Tocci's promissory estoppel claim. The question for that claim is not whether the amount claimed in the lien was accurate or whether Trane had an ulterior motive for filing the lien. The question is whether filing the lien breached a promise that Trane made to Tocci. For the reasons explained, the undisputed facts show that the lien did not breach a promise in the supplier affidavits, so Trane is entitled to summary judgment on this part of the promissory estoppel claim.

**b. Telephone conversation**

Tocci's alternative argument is that Trane made a verbal promise not to file a lien. Tocci points to the allegation in its complaint that "Trane advised [Tocci's senior project manager during a February 13, 2017 telephone call] that it was their intent to put a lien on the Project but she reviewed Trane's Supplier Affidavits with them and Trane agreed to hold off on filing their lien until they got a chance to review and talk to Quality." Dkt. 1, ¶ 32.

This argument fails for three reasons. First, Tocci does not cite any admissible evidence to support it. Tocci's complaint is not verified, so Tocci cannot rely on it to oppose a summary judgment motion. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104–05 (7th Cir. 2012). In its brief, Tocci says that there is a February 13 email from its project manager, Glynda Wehring, in which Wehring wrote that Trane "expressed their intent to put a lien on the project but I reviewed the Trane lien waivers with them and they will hold off until they get a chance to review and talk to Quality." Dkt. 78, at 28 (citing Dkt. 82-86). But the cited exhibit does not include any emails from Wehring and does not appear to include the quoted statement.

But even if Wehring wrote an email that included the above statement, the email would be hearsay, and Tocci does not identify any hearsay exception that would apply. So the email would also be inadmissible. And even if the email were admissible, there is no mention of a promise in the email.

Tocci says that a promise can also be inferred from statements by Trane employees suggesting that Trane might work with Tocci directly rather than through Quality. *See* Dkt. 78, at 28–29 (citing email from Trane employee stating, "Tocci requested that I pull together a proposal for all of the open material and labor on the project so they could purchase directly from us"). These statements may suggest that Trane was considering options other than filing a lien, but it is not reasonable to infer from these statements that Trane promised anything to Tocci. The statements say nothing about the lien or a promise.

Second, even if Trane made the promise alleged in the complaint, Tocci does not point to any reliance on that promise. Trane made the alleged promise only eight days before it filed the lien. Tocci identifies no payments it made or anything else it did during that the relevant time because Trane made the alleged promise.

Third, Tocci cites no evidence that Trane broke the alleged promise. Even under its own terms, the alleged promise was not a promise to refrain from filing a lien indefinitely; it was to hold off on filing a lien until Trane "got a chance to review and talk to Quality." Tocci cites no evidence that Trane failed to do that. Rather, Trane says that it did review the matter before filing the lien, including by referring the matter to outside counsel. Dkt. 91, ¶¶ 313–14. Plaintiffs suggest that the promised "review" included "an accounting" and a "price proposal," Dkt. 78, at 29, but plaintiffs identify no factual basis for this. Neither party cites any evidence regarding whether Trane "talk[ed] to Quality" before filing the lien, but even if Trane failed to

do that, Tocci identifies no harm it suffered as a result, and it cites no evidence that talking to Quality would have changed anything.

The bottom line is that Tocci has not identified a promise that Trane broke. So Trane is entitled to summary judgment on this claim.

## ORDER

IT IS ORDERED that:

1. Defendant Trane U.S. Inc's motion for summary judgment, Dkt. 68, is GRANTED.
2. Trane's motion to strike the expert report of Richard Smocke, Dkt. 87, is DENIED as moot.
3. Trane's motion for a protective order, Dkt. 123, is DENIED as moot.
4. The clerk of court is directed to enter judgment and close this case.
5. The court will issue a separate order on the motion for sanctions.

Entered October 9, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge